Good morning. May it please the Court, my name is Janice Lagerlof, appearing for Henry Thompson. What I plan to focus on this morning, unless the Court has questions in other areas, are two components of the competency argument. The first being what evidence should the Court have considered, and the second being whether either version of that evidence meets the substantial evidence requirement for a competency, to require a competency hearing. It's our position that the Court of Appeal and the District Court arbitrarily applied, interpreted California state law to say that under 1170D, when the trial court had before it additional evidence submitted by Dr. Durning about Petitioner's, Mr. Thompson's developmental disability, that it considered that there was no jurisdiction, and it was not appropriate to consider that evidence. Excuse me, counsel, may I just ask you a question about that? There appears to be credible evidence that Petitioner is mentally deficient, but low intelligence alone does not render a defendant incompetent to stand trial. Could you specifically point to evidence that the Petitioner was unable to understand the proceedings or assist in his defense? I can point to evidence aside from the doctor's reports. His trial counsel expressed concern about his inability to understand and communicate with him, and that was substantiated by Dr. Watson and Dr. Durning's description of his cognitive limitations, his inability to process information that he hears, and to rationally manipulate that information to make a decision. But Dr. Denning, Dr. Denning's report was submitted after his canvassing, so how can we consider Dr. Denning's report? Because under 1170D, a trial court within 120 days, which this motion came under, has the ability, the sentence, or the statute specifically says, it can recall the sentence, previously ordered, and resentence the defendant in the same manner as if he or she had not previously been sentenced. There's no limitation on the reasons in the statute. The only limitation in the statute is that the sentence can't be any higher. Let me ask you, what does the statute have to do with the United States Constitution? Well, it's a little, it's sort of a long road to that place, but the statute gives We're in the world of hate, right? No, I understand that. And we're in the world of AEDP review, correct? Yes. All right. Yes. So the statute Where's the constitutional violation? The constitutional violation is that the court had before it information giving a substantial, raising a substantial doubt about whether Mr. Thompson was competent legally under drope and dusky and paid. And the court had jurisdiction Now, when did it have that information in front of it? Well, it had that information in front of it before the first sentencing. If you exclude Dr. Durning's information Well, we're only talking, we're not, he wasn't trying to invalidate the jury's finding of guilt in this current case. Well, the All arose in connection with his effort to have prior convictions stricken so that he wasn't subject to a three-strike sentence. Isn't that correct? That's the context in which the defense counsel brought it forward. But the trial judge has a sua sponte obligation to neither try nor sentence a defendant. He had already been tried, but he had already been found guilty of the pending charge when the request was made to obtain, when counsel submitted, I forget which doctor's report it was at that time. Right. He'd already been convicted. And during the course of the trial, no one ever said, hey, judge, I think defendant's got a problem. No, but the Correct? That's correct. But the statute Before trial? Is anything said? No, there were no competency proceedings initiated by the defense lawyer ever. I'm not even talking about, I'm just talking about did anybody say to the trial judge, judge, I have some concerns about my client's ability to understand what's going on. My client is acting out in the jail. My client is not cooperating with me. My client doesn't seem to understand anything I'm saying. He can't answer my questions. Did the trial lawyer ever say that to the judge? No. No, he did not until he submitted Dr. Watson's report prior to sentencing and the due process clause prohibits trial or sentence of a mentally incompetent individual. Right. So, but the question really remains, even after the report from the first doctor, Dr. Watson is submitted, which is pre-sentence, let's say pre-judgment. Yes. We've not, even then the lawyer's not asking for a sentence for a competence determination. The lawyer's asking this really with respect to sentencing. So we're still, I think, in the world of an obligation of the judge sua sponte to order a competency hearing. Is that right? That's my position, yes. Yes, it is. So that doesn't, even Dr. Watson's report doesn't constitute a request for competency hearing. It's not framed in that manner, but it relates a condition with certain. And your view is that that puts the judge on notice. Yes. That a reasonable judge would have had questions about whether this individual. And obviously Dr. Durning's report that comes post-sentence is more favorable to the client. This is a more favorable in the sense that says he's even more incompetent than previously diagnosed. I think it's more specific in terms of the kinds of issues that he would have a hard time understanding. It makes the case in favor of incompetency a little stronger, it seems to me. Yes, it does. But do you have a Supreme Court case that tells us anything about the obligation of a state judge to order sua sponte, a competency hearing, post-judgment? I understand your argument that California allows the judgment to be upset and a new sentence to be imposed. But what I'm interested in is I need a Supreme Court case because that's what EBPA tells me I need. Well, I guess I would make a two- or three-step path to that finding, which is under California 1170D essentially wipes out the first sentencing so that we're pre-judgment. If the court had decided to grant that motion, we would have been in the position we were pre-judgment, and then the court would have had that information prior to resentencing. And therefore the court didn't. It refused to do that. So I'm interested in not what could have happened under California law, because I think I'm on the same page with you on that. I'm interested in, and I'm afraid there isn't a case, which is why I'm pressing you on this. I'd like you to have one for me, where the Supreme Court says that the sua sponte obligation persists even after judgment. Well, I believe that the case that was cited in the respondent's brief, McMurtry, talks about a very old judgment from Arizona that was a 1982 conviction. There was sentencing. It was a long, convoluted legal proceeding where there ultimately was a competency hearing held, and the court had found that. Let me just look. I wrote this down. This was just last year, coming out of the Ninth Circuit. It found that the post-judgment hearing couldn't make up for the failure of the court to hold the hearing in the trial court at the proper time to determine. And there were several different steps in that case where the issue was addressed. But that's not a Supreme Court case. It's not a Supreme Court case. No. No. I think, though, but I guess I have to really hook my argument on the fact that, given the fact that the court did have authority to undo the judgment and start over again, that information from Dr. Durning was – would then have been appropriate to raise the issue. I also submit that, even though I would love this Court to consider Dr. Durning's testimony, I think it's very important and it's more specific, it doesn't really alter Dr. Watson's description of Mr. Thompson's cognitive abilities. And it's not just the doctor's report that we're looking at. I think there also was information, not only the extensive research done by Dr. Watson, but also the trial lawyer's statements about how he had difficulty communicating, which he made at sentencing and which also were contained in Dr. Watson's report. That was what prompted him to go to Dr. Watson in the first place. He just couldn't seem to get through to his client about the case. Mr. Thompson's behavior at the crime scene was bizarre. Clearly somebody who didn't seem to understand the consequences of his behavior and to be able to manipulate information that was complex. And I think the other thing that's really important, a lot of the cases cited by both of us and dealt with in the competency hearing deal with mental illness. And mental illness and developmental disability or mental retardation display themselves very differently. Dr. Watson makes very clear that Mr. Thompson, with his long history of having to get by in the world on very little cognitive ability and resources, had learned to be a pretty successful person at passing. So it's not like a schizophrenic who's in court not on his meds and not able to control himself. Mr. Thompson's exhibited his disability by being good and by pretending that he understood and by not asking questions, by not challenging. That doesn't make it a less significant aspect of his disability. It's just a different manifestation of something that kept him unable to understand. Let's hear from the State and we'll give you a minute to respond. Thank you, Your Honor. May it please the Court, Arthur Beaver for Appellee. I believe our brief adequately explains our position. As you pointed out, there is no clearly established United States Supreme Court law establishing a sua sponte duty for a trial court to declare a genuine doubt when presented with evidence post-judgment. Here the only evidence that the Court ought to consider is Dr. Watson's report, its observations of the defendant and anything that happened prior to sentencing. And as we explained in our brief... And so we have a clearly established Supreme Court case law that under certain circumstances where the signs are strong enough, the state court judge has a sua sponte obligation. Correct. Why was that level not satisfied here? Here, Dr. Watson's report is the only clinical evidence we had. It describes mild retardation, but it's important to remember that it was not directed at establishing incompetence or creating a genuine doubt. It was rather intended to mitigate sentencing. Well, I understand that, but you see, we're arguing. I'm absolutely with you on this point. It's not that the argument was made directly to him. Otherwise, we would have him rejecting a motion. We're talking sua sponte. Once he sees that information, does he have a sua sponte obligation to say, hey, wait a minute, you know, we've got a problem? Well, that duty only arises when he has a genuine or bona fide doubt of competency. I know, and that's my question. Why does he not, at the time he finally gets Dr. Watson's report, have enough doubt that he has an obligation to do that hearing? Because the report only describes mild retardation, and the United States Supreme Court has held that retardation is not a reason to excuse those people who are suffering from it from criminal liability. And I believe I cited it in your report. No, we're not talking criminal liability. We're talking about competency to assist in trial. Well, the report did not describe an inability to communicate with his attorney or an inability to understand the nature of the proceedings against him. Therefore, there's no doubt. The report did not create any genuine doubt as to his competence. The only other evidence that we had is the counsel's description of some difficulty communicating with him. I imagine that's a common problem with attorneys and certain clients. But mere difficulty communicating with him does not, again, establish an inability to communicate and assist with attorneys. There is no other evidence of incompetence unless we start speaking about Dr. Durning's report, which, as you've noted, was submitted after judgment and, therefore, ought not to be considered. Unless there are any other questions, we're prepared to submit a brief. Thank you. Thank you. Would you like a moment? Yes, please. A theme that runs through many criminal law cases regarding the effect of mild mental retardation fails to recognize the severity of what mild mental retardation is. Mr. Thompson operates at the under 1 percentile of the normal population. And Dr. Watson's information contained a lot of diagnoses and observations about his abilities to comprehend, to process information, to manipulate information, to perseverate, which means to get lost in a part of the question without comprehending the whole of the question. And he had impaired memory, which is important in an alibi case. The other issue that I want to take was something the State said, is that the question for this Court is not whether this judge actually had a doubt, but whether a reasonable judge would have had a doubt about competence. And that's an important distinction in the standard. Thank you. Thank you very much for your useful argument. Thompson v. Plyler, now submitted for decision.
judges: Nelson D. W., Fletcher W. , Paez